Thomas S. Rosenthal, Esq.
(TR-8021)
11 Broadway
Suite 2150
New York, New York  10004
(212) 582-6651

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHANIE NEVERSON-YOUNG,<br><br>　　　　　　Plaintiff,<br><br>　　-against-<br><br>BLACKROCK, INC., and<br>ANNMARIE SMITH,<br><br>　　　　　　Defendants. | 09 Civ. 6716 (JGK)<br><br>**AMENDED COMPLAINT**<br><br>ECF Case<br><br>Jury Trial Demanded |

Plaintiff Stephanie Neverson-Young ("plaintiff" or "Ms. Neverson-Young"), by and through her undersigned attorneys, as and for her Amended Complaint, alleges as follows:

**NATURE OF THE ACTION**

1.　　This is an action in which plaintiff seeks recovery for injuries, and to remedy unlawful discrimination, harassment, and retaliation in employment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII"), 42 U.S.C. § 1981, the New York Executive Law, Section 290 *et seq*. (the "New York Executive Law"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 *et seq*.  (the "New York

City Human Rights Law").  Plaintiff also asserts a common law battery claim against defendant AnnMarie Smith.

## THE PARTIES

2.      Plaintiff is a former employee of defendant BlackRock, Inc. and resides at 722 East 79th Street, Brooklyn, New York 11236.  Plaintiff is a black female.

3.      Defendant BlackRock, Inc. ("BlackRock" or "defendant BlackRock") is a Delaware corporation with offices in New York located at 40 East 52nd Street, New York, New York.  BlackRock is a provider of global investment management, risk management and advisory services to institutional and retail clients around the world.  BlackRock is an employer within the meaning of Title VII, the New York Executive Law, and § 8-107 of the New York City Human Rights Law.

4.      Defendant AnnMarie Smith ("Ms. Smith" or "defendant Smith") is an employee of BlackRock in its New York office and resides at 800 Scudders Mill Road, Plainsboro, New Jersey 08536.  During the relevant period herein, BlackRock employed Ms. Smith as a Vice President, then as a Director supervising Ms. Neverson-Young's employment, all in BlackRock's New York City offices.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over plaintiff's federal claims under 42 U.S.C. § 1981 and based upon a federal question (28 U.S.C. § 1331) presented under Title VII.  Jurisdiction over plaintiff's claims is also conferred on this Court by 28 U.S.C. §§ 1332 and 1343.

6.     Supplemental jurisdiction over plaintiff's claims alleging violations of state and city law, including New York Executive Law and the New York City Human Rights Law, exists pursuant to 28 U.S.C. § 1367(a).

7.     An administrative proceeding, required pursuant to 42 U.S.C. § 2000e-5 as a prerequisite to commencing an action under Title VII, was instituted with the U.S. Equal Employment Opportunity Commission ("EEOC"), charge number 520 2009 03290, on May 20, 2009.  Plaintiff filed the Title VII claims in the instant action within 90 days from receipt of the Notice of Right to Sue from the EEOC dated August 31, 2009.

8.     On or about September 14, 2009, pursuant to § 8-502(c) of the Administrative Code of the City of New York, a copy of this Amended Complaint was served upon the New York City Commission on Human Rights and the Corporation Counsel, Law Department of the City of New York.

9.     BlackRock is found and resides in this district.  Defendant Smith was employed in this district.  Plaintiff's employment records were or are maintained in this judicial district.  Plaintiff was employed in this judicial district.  The unlawful employment practices and acts

-3-

about which plaintiff complains occurred in this judicial district.  Venue is therefore proper in the

Southern District of New York pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391.

## Factual Allegations

10.     After several months of working for BlackRock as an independent contractor in

the position of Executive Assistant, Ms. Neverson-Young commenced employment with

BlackRock in January 2007 as an Administrative Assistant in its Bank Loan Department.  In or

about February 2008, Ms. Neverson-Young was promoted to Bank Loan Specialist and continued

in that position until her discharge from employment in August 2008.

11.     Defendant Smith also was employed by BlackRock, commencing in 2007, first as

a Vice President and then as a Director commencing in January 2008.  Ms. Neverson-Young

reported to Ms. Smith upon their respective promotions.

12.     For the duration of her employment, Ms. Neverson-Young was the only black

employed in BlackRock's Bank Loan Department.

13.     Ms. Neverson-Young performed the duties, functions and responsibilities of her

employment in a fully satisfactory manner.

14.     BlackRock's Bank Loan Department made loans to banks, institutions and

companies.  Ms. Neverson-Young was responsible for evaluating proposals for loans and

reviewing details of proposals.  Her first two performance evaluations were excellent, the second

coming from Ms. Smith.  The Bank Loan Department was headed by Mark Williams, a

Managing Director of BlackRock.

15.     In or about late April 2008, Ms. Neverson-Young registered a complaint with

George Sarkos, BlackRock's Director of Human Resources (with whom Ms. Smith had worked

for years at Merrill Lynch), about a concern she had regarding Ms. Smith and her treatment of

plaintiff when Ms. Smith yelled and screamed at plaintiff, banged desk drawers and the

telephone, and spoke to plaintiff in a demeaning manner.  Mr. Sarkos responded by saying that

Ms. Neverson-Young's complaint was about women's issues, that it might be "that time of

month," that it was nothing more than a "catty" issue, and suggested that Ms. Neverson-Young

and Ms. Smith "go out shopping" and do what women do.  At that time, Ms. Smith told Ms.

Neverson-Young that she knew that Ms. Neverson-Young had lodged a complaint with Human

Resources and told Ms. Neverson-Young that she (Ms. Smith) and Mr. Sarkos had a fifteen year

work relationship.  Ms. Neverson-Young was angered and humiliated by Mr. Sarkos' gender-

based and insulting response to her complaint.

16.     Over the next several months, Ms. Smith's words and actions toward plaintiff

became increasingly personal and unprofessional, to the point where co-workers teased plaintiff

about Ms. Smith's demeanor toward, and interaction with, Ms. Neverson-Young.  Ms. Smith

referred to Ms. Neverson-Young as an exotic, gorgeous girl who was sexy and she became upset

when males approached Ms. Neverson-Young.  Ms. Smith objected to Ms. Neverson-Young

dating certain men and told Ms. Neverson-Young that it was her (defendant Smith's) job to

protect her.  In addition, Ms. Smith objected to the fact that Ms. Neverson-Young was dating, expressing to plaintiff, "what about me?"

17.    Ms. Smith, as plaintiff's supervisor, required Ms. Neverson-Young to stay at work late evenings so that the two could spend more time together.  On most of these occasions, either the work could have been performed during day time business hours or there was little or no work to be done during the evening hours.  Ms. Smith simply wanted to spend time with Ms. Neverson-Young.

18.    Ms. Smith's comments and course of conduct culminated in a blatant act against plaintiff on July 29, 2008, during which Ms. Smith engaged in unwelcome sexual touching, fondling, and groping of Ms. Neverson-Young.  On that occasion, Ms. Smith first put her arms around Ms. Neverson-Young, then pressed Ms. Neverson-Young against a wall, embraced her, touching her thighs and breasts.  Ms. Neverson-Young strenuously resisted Ms. Smith's sexual advances and battery, made it abundantly clear to Ms. Smith that her conduct was unwelcome by immediately pushing Ms. Smith off of her, and said to Ms. Smith, "Have you lost your [ ] mind?"  Ms. Smith responded by saying that if a guy were doing what she had done, Ms. Neverson-Young would not be complaining.  Ms. Neverson-Young replied that she is into men, not women, and told Ms. Smith to keep her hands off of her.

19.    Ms. Smith became irate that she had been rejected, warned Ms. Neverson-Young that she should not think that she could complain about Ms. Smith's actions, and threatened that if plaintiff complained, it would be Ms. Smith's word against plaintiff's and that no one would

believe the word of a black woman (Ms. Neverson-Young) over the word of a white woman (Ms. Smith).

20.     Ms. Smith threatened Ms. Neverson-Young's job, commented upon Ms. Neverson-Young's marital status by reminding plaintiff that plaintiff was a single mom with two kids, had a daughter in college and an ex-husband who was not helping financially, and that the unemployment rate was rising.  Ms. Smith told Ms. Neverson-Young that plaintiff was being selfish, added that Mr. Sarkos, head of BlackRock's Human Resources, was her friend (going back to their 15 years together at Merrill Lynch wherein both were employed), and that no action would be taken if Ms. Neverson-Young registered a complaint.  Ms. Smith further stated that plaintiff's "pretty little ass wouldn't be hard to get rid of," while she warned Ms. Neverson-Young not to complain about Ms. Smith's actions and comments or risk losing her job.

21.     Finally, Ms. Smith pointedly threatened Ms. Neverson-Young that she knew how to get rid of people who did not play on her team, and that Ms. Neverson-Young would be terminated if she was "stupid enough to complain."

22.     Over the next week, plaintiff was guarded around Ms. Smith, to which Ms. Smith responded that Ms. Neverson-Young needed to pull herself together so nobody would know that anything had happened between the two of them.  Ms. Smith told plaintiff that she needed to adjust her attitude.

23.     Just one week later, on August 5, 2008, and a mere four months after Ms. Smith had accorded plaintiff an excellent performance evaluation, Mr. Smith gave plaintiff a false,

fabricated, and fraudulent mid-year review.  Ms. Smith told Ms. Neverson-Young that she did

not like Ms. Neverson-Young's attitude since July 29, 2008, the date Ms. Smith touched, fondled

and groped Ms. Neverson-Young against her will.  Up until this contrived review, plaintiff never

had been informed that her performance was less than exemplary or otherwise contrary to the

positive performance review Ms. Smith had accorded her before Ms. Neverson-Young rejected

her flagrant sexual advances, touching and groping.

24.     Immediately after the meeting with Ms. Smith wherein plaintiff was accorded a

false and fabricated performance review, plaintiff told Ms. Smith that she was going to meet with

and talk to Managing Director Mark Williams, Ms. Smith's supervisor.  Ms. Smith raced past

plaintiff to talk to Mr. Williams first.

25.     On August 5, 2008, despite her fear based on Ms. Smith's blatant threats to Ms.

Neverson-Young about the loss of her job, as well as the hostile work environment to which Ms.

Smith had subjected Ms. Neverson-Young, plaintiff complained in detail to Mr. Williams about

the sexual harassment and battery that had occurred on July 29, 2008, as well as the race-based

comments and innuendo, Ms. Smith's threats to Ms. Neverson-Young if she complained and the

fabricated and false performance review.  Mr. Williams' initial reaction was unabashed laughter

and telling Ms. Neverson-Young that he found the allegations to be absurd.  After Ms. Neverson-

Young began to sob, Mr. Williams assured her that he would handle the matter immediately and

told her that there was no need for her to contact Human Resources, that he would handle the

complaint.

26.     The very next morning after plaintiff's meeting with Mr. Williams, Ms. Smith told plaintiff that she was foolish to complain and would "pay for it."  Ms. Smith immediately requested that Ms. Neverson-Young provide her with copies of all of their correspondence and that she would have to report when she arrived and left each day.  Ms. Smith sarcastically said to plaintiff that she was going to treat Complaint "real special" or words to that effect.

27.     Subsequently, despite her complaint, no representative of BlackRock contacted Ms. Neverson-Young, interviewed her, or otherwise apprised her that BlackRock was investigating Ms. Neverson-Young's allegations of race- and gender-based discrimination, including harassment.

28.     In contrast, just two weeks later, on August 20, 2008, BlackRock terminated plaintiff's employment.  The reason given to plaintiff for her discharge was that BlackRock was eliminating several positions, including Ms. Neverson-Young's, even though, on information and belief, Ms. Neverson-Young was the only employee terminated in BlackRock's New York office. Approximately two weeks before plaintiff's termination, a company-wide email sought referrals of potential employees due to BlackRock's aggressive growth.  Plaintiff's personal workload had been consistently busy for many months, with a large volume of work added after the federal government awarded BlackRock the bid to review Bear Stearns' portfolio.  Indeed, Ms. Neverson-Young was told that the amount of work in the Bank Loan Department was so voluminous that she would not be permitted to perform any of her other functions, such as assisting Managing Directors and performing "meet and greet" services for visitors.  Upon information and belief, plaintiff's job was posted and her position was filled.

29.    In its haste to fire plaintiff, BlackRock ignored and violated its own policy requiring that good faith efforts be made prior to discharge to place an eliminated employee elsewhere within BlackRock.  In addition, and on information and belief at the behest of his friend Ms. Smith, in the weeks subsequent to plaintiff's discharge, Mr. Sarkos repeatedly called Ms. Neverson-Young and strongly pressured her to sign a release agreement.  The pressure ceased only when Ms. Neverson-Young warned him not to contact her any further.

30.    As the result of defendants' actions and treatment of plaintiff, Ms. Neverson-Young felt ridiculed and has suffered mental anguish and distress, pain and suffering, and emotional trauma, as well as a significant and substantial loss of income and employment opportunities.

## COUNT I

### Gender Discrimination and Sexual Harassment in Violation of Title VII

31.    Plaintiff repeats and realleges paragraphs 1 through 30 as if fully set forth herein.

32.    Plaintiff was at all relevant times herein BlackRock's "employee" as that term is defined under Title VII.

33.    BlackRock was at all relevant times herein plaintiff's "employer" as that term is defined under Title VII.  BlackRock employed more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year.

-10-

34.     By the aforementioned conduct, BlackRock, through its agents, representatives, and/or employees (including supervisory employees), discriminated against plaintiff, on the basis of sex, with respect to the terms, conditions and privileges of her employment, including sexual harassment of plaintiff, by creating, fostering and participating in a hostile work environment of intimidation, ridicule and insult, thereby exposing and subjecting plaintiff to a work environment that was hostile and abusive, constituting severe and pervasive sex harassment that adversely affected the conditions of plaintiff's employment, by engaging in quid pro quo sexual harassment, and by terminating plaintiff's employment, all in violation of Title VII.

35.     By its gender-based decisionmaking process, and gender-based comments, defendant BlackRock, through its agents, representatives or employees, including defendant Smith, discriminated against plaintiff with respect to her terms, conditions or privileges of employment, because of her sex, and/or classified or stereotyped plaintiff on the basis of gender in a manner to affect adversely her status as an employee and otherwise to deny plaintiff equal opportunities for employment, ultimately terminating plaintiff from her employment, in violation of Title VII.

36.     BlackRock's acts and omissions were committed with malice toward plaintiff or with a reckless indifference to plaintiff's rights under Title VII.

## COUNT II

### Race/Color Discrimination in Violation of Title VII

37      Plaintiff repeats and realleges paragraphs 1 through 36 as if fully set forth herein.

38.      By the aforementioned conduct, BlackRock, through its agents, representatives, and/or employees (including supervisory employees), discriminated against plaintiff, on the basis of race/color, with respect to the terms, conditions and privileges of her employment, including, but not limited to, the termination of plaintiff's employment, in violation of Title VII.

39.      BlackRock's race/color-based decisionmaking process, and race/color-based comments, discriminated against plaintiff by denying her equal terms and conditions of employment, and limited, stereotyped, or classified plaintiff, because of her race/color, in violation of Title VII.

40.      BlackRock's acts and omissions were committed with malice toward plaintiff or with a reckless indifference to plaintiff's rights under Title VII.

## COUNT III

### Racial Discrimination and Harassment in Violation of 42 U.S.C. § 1981

41.      Plaintiff repeats and realleges paragraphs 1 through 40 as if fully set forth herein.

42.      Plaintiff suffered racial harassment and discrimination at the hands of BlackRock, through Mr. Williams and defendant Smith, including, but not limited to, being classified, stereotyped, and subjected to race-based comments, and otherwise denied the benefits, privileges,

-12-

terms and conditions of her employment because of her race, to wit, the right to make and

enforce contracts, culminating in the termination of plaintiff's employment, in violation of 42

U.S.C. § 1981.

43.     BlackRock's actions, by and through its agents and representatives, including

defendant Smith, were willful, wanton, reckless, and malicious, and further show a complete and

deliberate indifference to, and conscious disregard for, plaintiff's rights.  Therefore, plaintiff is

entitled to an award of punitive or exemplary damages in an amount sufficient to punish

BlackRock or deter it and other companies from like conduct in the future.

### COUNT IV

**Gender Discrimination and Sexual Harassment In Violation
of New York Executive Law § 296**

44.     Plaintiff repeats and realleges paragraphs 1 through 43 as if fully set forth herein.

45.     Plaintiff was at all relevant times herein defendant BlackRock's employee as that

term is defined under New York Executive Law § 292(1).

46.     Defendant BlackRock was at all relevant times herein plaintiff's employer as that

term is defined in New York Executive Law § 292(5).

47.     By the aforementioned conduct, BlackRock, through its agents, representatives,

and/or employees (including supervisory employees), discriminated against plaintiff, on the basis

of sex, with respect to the terms, conditions and privileges of her employment, including sexual

harassment of plaintiff, by creating, fostering and participating in a hostile work environment of

intimidation, ridicule and insult, thereby exposing and subjecting plaintiff to a work environment that was hostile and abusive, constituting severe and pervasive sex harassment that adversely affected the conditions of plaintiff's employment -- an unlawful employment practice --, by engaging in quid pro quo sexual harassment, and by terminating plaintiff's employment, all in violation of the New York Executive Law.

48.     By its gender-based decisionmaking process, and gender-based comments, defendant BlackRock, through its agents, representatives or employees, including defendant Smith, discriminated against plaintiff with respect to her terms, conditions or privileges of employment, because of her sex, and/or classified or stereotyped plaintiff on the basis of gender in a manner to affect adversely her status as an employee and otherwise to deny plaintiff equal opportunities for employment, ultimately terminating plaintiff from her employment, in violation of New York Executive Law § 296.

## COUNT V

### Race/Color Discrimination
### in Violation of New York Executive Law

49.     Plaintiff repeats and realleges paragraphs 1 through 48 as if fully set forth herein.

50.     By the aforementioned conduct, BlackRock, through its agents, representatives, and/or employees (including supervisory employees), discriminated against plaintiff, on the basis of race/color, with respect to the terms, conditions and privileges of her employment, including, but not limited to, the termination of plaintiff's employment, in violation of the New York Executive Law.

-14-

51.     BlackRock's race/color-based decisionmaking process, and race/color-based comments, discriminated against plaintiff by denying her equal terms and conditions of employment, and limited, stereotyped, or classified plaintiff, because of her race/color, in violation of the New York Executive Law.

## COUNT VI

### Marital Status Discrimination in Violation
### of the New York Executive Law

52.     Plaintiff repeats and realleges paragraphs 1 though 51 as if fully set forth herein.

53.     By the aforementioned conduct, including defendant Smith's comments and conduct toward plaintiff because of her marital status and, ultimately, plaintiff's discharge from employment, defendant BlackRock discriminated against plaintiff in violation of the New York Executive Law.

## COUNT VII

### Aiding and Abetting Discrimination in
### Violation of New York Executive Law

54.     Plaintiff repeats and realleges paragraphs 1 through 53 as if fully set forth herein.

55.     By her aforementioned conduct, defendant Smith aided and abetted BlackRock's discriminatory treatment of plaintiff, including, but not limited to, defendant Smith's sexual harassment of plaintiff, and defendant Smith's discriminatory and unequal application of terms and conditions of employment upon plaintiff, on the basis of gender/sex, race/color, or marital status, in violation of New York Executive Law § 296(6).

-15-

## COUNT VIII

### Gender Discrimination and Sexual Harassment in Violation
### of the New York City Human Rights Law

56.     Plaintiff repeats and realleges paragraphs 1 through 55 as if fully set forth herein.

57.     Plaintiff was at all relevant times herein BlackRock's employee as that term is defined under Title 8 of the New York City Human Rights Law.

58.     BlackRock was at all relevant times herein plaintiff's employer as that term is defined under the New York City Human Rights Law.

59.     By the aforementioned conduct, BlackRock, through its agents, representatives, and/or employees (including supervisory employees), discriminated against plaintiff, on the basis of sex, with respect to the terms, conditions and privileges of her employment, including sexual harassment of plaintiff, by creating, fostering and participating in a hostile work environment of intimidation, ridicule and insult, thereby exposing and subjecting plaintiff to a work environment that was hostile and abusive, constituting severe and pervasive sex harassment that adversely affected the conditions of plaintiff's employment -- an unlawful employment practice –, by engaging in quid pro quo sexual harassment, and by terminating plaintiff's employment, all in violation of the New York City Human Rights Law.

60.     By its gender-based decisionmaking process, and gender-based comments, defendant BlackRock, through its agents, representatives or employees, including defendant Smith, discriminated against plaintiff with respect to her terms, conditions or privileges of

-16-

employment, because of her sex, and/or classified or stereotyped plaintiff on the basis of gender

in a manner to affect adversely her status as an employee and otherwise to deny plaintiff equal

opportunities for employment, ultimately terminating plaintiff from her employment, in violation

of the New York City Human Rights Law.

61.     BlackRock's actions, by and through its agents and representatives, including

defendant Smith, were willful, wanton, reckless, and malicious, and further show a complete and

deliberate indifference to, and conscious disregard for, plaintiff's rights under the New York City

Human Rights Law.  Therefore, plaintiff is entitled to an award of punitive or exemplary

damages in an amount sufficient to punish defendants or deter them and others from like conduct

in the future.

## COUNT IX

### Race/Color Discrimination
### in Violation of the New York City Human Rights Law

62.     Plaintiff repeats and realleges paragraphs 1 through 61 as if fully set forth herein.

63.     By the aforementioned conduct, BlackRock, through its agents, representatives,

and/or employees (including supervisory employees), discriminated against plaintiff, on the basis

of race/color, with respect to the terms, conditions and privileges of her employment, including,

but not limited to, the termination of plaintiff's employment, in violation of the New York City

Human Rights Law.

64.     BlackRock's race/color-based decisionmaking process, and race/color-based comments, discriminated against plaintiff by denying her equal terms and conditions of employment, and limited, stereotyped, or classified plaintiff, because of her race/color, in violation of the New York City Human Rights Law.

65.     BlackRock's actions, by and through its agents and representatives, including defendant Smith, were willful, wanton, reckless, and malicious, and further show a complete and deliberate indifference to, and conscious disregard for, plaintiff's rights under the New York City Human Rights Law.  Therefore, plaintiff is entitled to an award of punitive or exemplary damages in an amount sufficient to punish defendants or deter them and others from like conduct in the future.

## COUNT X

### Marital Status Discrimination in Violation
### of the New York City Human Rights Law

66.     Plaintiff repeats and realleges paragraphs 1 though 65 as if fully set forth herein.

67.     By the aforementioned conduct, including defendant Smith's comments and conduct toward plaintiff because of her marital status and, ultimately, plaintiff's discharge from employment, defendant BlackRock discriminated against plaintiff in violation of the New York City Human Rights Law.

68.     BlackRock's actions, by and through its agents and representatives, including defendant Smith, were willful, wanton, reckless, and malicious, and further show a complete and

deliberate indifference to, and conscious disregard for, plaintiff's rights under the New York City

Human Rights Law.  Therefore, plaintiff is entitled to an award of punitive or exemplary

damages in an amount sufficient to punish defendants or deter them and others from like conduct

in the future.

## COUNT XI

### Aiding and Abetting Discrimination in
### Violation of the New York City Human Rights Law

69.     Plaintiff repeats and realleges paragraphs 1 through 68 as if fully set forth herein.

70.     By her aforementioned conduct, defendant Smith aided and abetted BlackRock's

discriminatory treatment of plaintiff, including, but not limited to, defendant Smith's sexual

harassment of plaintiff, and defendant Smith's discriminatory and unequal application of terms

and conditions of employment upon plaintiff, on the basis of gender/sex, race/color, or martial

status, in violation of the New York City Human Rights Law.

71.     BlackRock's actions, by and through its agents and representatives, including

defendant Smith, were willful, wanton, reckless, and malicious, and further show a complete and

deliberate indifference to, and conscious disregard for, plaintiff's rights under the New York City

Human Rights Law.  Therefore, plaintiff is entitled to an award of punitive or exemplary

damages in an amount sufficient to punish defendants or deter them and others from like conduct

in the future.

## COUNT XII

**Retaliation In Violation Of Title VII, 42 U.S.C. § 1981,
New York Executive Law, and the New York City Human Rights Law**

72.     Plaintiff repeats and realleges paragraphs 1 through 71 as if fully set forth herein.

73.     BlackRock was aware that Ms. Neverson-Young engaged in a protected activity under Title VII, 42 U.S.C. § 1981, the New York Executive Law and the New York City Human Rights Law when she complained about the sexual harassment, gender discrimination, and race/color discrimination.

74.     After plaintiff complained of and expressed her opposition to defendants' discriminatory treatment of her on the basis of sex/gender and race/color, defendant BlackRock, through its agents, representatives, or employees, retaliated against plaintiff by according her a false and fabricated negative performance review and, ultimately, terminating her employment, in violation of Title VII, 42 U.S.C. § 1981, New York Executive Law § 296(7), and § 8-107 of the New York City Human Rights Law.

75.     That retaliation adversely and severely impacted upon plaintiff's position, career and well-being and was designed to punish her for having complained about the unlawful and humiliating treatment she was forced to endure.  Defendants not only caused the loss of Ms. Neverson-Young's employment, but emotional and physical pain and suffering as well, including mental anguish and distress, and physical manifestations as the result of the discriminatory and retaliatory treatment of plaintiff.

76.     Defendants knew or, in the exercise of reasonable care, should have known, of the abusive and reprehensible conduct which Ms. Smith and/or Mr. Williams directed against plaintiff, but, nevertheless, did nothing, thereby acquiescing and condoning the unlawful conduct. Mr. Williams, BlackRock's Managing Director and Head of BlackRock's Bank Loan Department, even laughed at Ms. Neverson-Young's allegations.

77.     The retaliatory conduct and actions taken by defendants were causally connected to plaintiff's protected activity, *i.e.*, protesting the sexual harassment and gender- and race/color-based  discrimination fostered by Ms. Smith and to which plaintiff was subjected by Ms. Smith.

78.     Defendants failed effectively to remedy or prevent and, indeed, exacerbated the reprisal against plaintiff, although they knew, or in the exercise of reasonable care, should have known, of the retaliation and its causal effect upon plaintiff.

79.     The hostile, abusive, demeaning and humiliating work environment resulting from the retaliation to which Ms. Neverson-Young was subjected, and the quid pro quo threats to Ms. Neverson-Young, unreasonably interfered with plaintiff's work and, therefore, unlawfully altered the terms, conditions and privileges of her employment, in violation of Title VII, 42 U.S.C. § 1981, the New York Executive Law and the New York City Human Rights Law.

## COUNT XIII

## Battery Cause of Action against Defendant Smith

80.     Plaintiff repeats and realleges paragraphs 1 through 79 as if fully set forth herein.

81.     Defendant Smith's conduct on July 29, 2008 constitutes intentional, harmful and offensive touching of Ms. Neverson-Young against her will and without her consent.

82.     The foregoing act of defendant Smith described herein constitutes battery.

83.     As a direct, actual and proximate cause of the foregoing battery, Ms. Neverson-Young has been severely injured and damaged in an amount to be determined at trial.


## Prayer for Relief

WHEREFORE, plaintiff respectfully requests that this Court enter an award:

(a)     Declaring the acts and practices complained of herein are in violation of Title VII, 42 U.S.C. § 1981, the New York Executive Law, the New York City Human Rights Law;

(b)     Enjoining and permanently restraining these violations of Title VII, 42 U.S.C. § 1981, the New York Executive Law, and the New York City Human Rights Law;

(c)     Directing defendant Blackrock to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect plaintiff's employment opportunities;

(d)     Directing defendant BlackRock to place plaintiff in the position she would be in but for defendant's discriminatory and retaliatory treatment of her, and to make her whole for all earnings she would have received but for defendants' discriminatory and retaliatory treatment, including, but not limited to, wages and other lost benefits;

(e)     Directing defendant BlackRock to reinstate plaintiff;

(f)     Declaring that defendant Smith's actions and conduct toward plaintiff constitutes battery;

(g)     Declaring that defendant Smith's actions and conduct toward plaintiff constitutes unlawful aiding and abetting under New York Executive Law and the New York City Human Rights Law;

(h)     Directing defendant BlackRock to pay punitive damages as provided by Title VII, 42 U.S.C. § 1981, and the New York City Human Rights Law;

(i)     Directing defendant Smith to pay punitive damages for her battery of plaintiff;

(j)     Directing defendants to pay an additional amount to compensate plaintiff for the emotional distress, humiliation, pain and suffering, and/or mental anguish defendants' conduct has caused plaintiff;

(k)     Awarding plaintiff such interest as is allowed by law;

(l)     Awarding plaintiff her reasonable attorneys' fees and costs for defendant BlackRock's violations of Title VII (pursuant to Title VII), and violations of 42 U.S.C. § 1981 (pursuant to 42 U.S.C. § 1988), and defendants' violations of the New York City Human Rights Law (pursuant to the New York City Human Rights Law); and

(m)     Granting such other and further relief as the Court deems necessary and proper.

<u>**Demand for Trial by Jury**</u>

Plaintiff hereby demands, pursuant to Fed.R.Civ.P. 38(b), a trial by jury in this action.

Dated:  New York, New York
       September 14, 2009

                                 By:      <u>/s/ thomas s. rosenthal</u>
                                          Thomas S. Rosenthal (TR-8021)
                                          LAW OFFICES – THOMAS S. ROSENTHAL
                                          11 Broadway
                                          Suite 2150
                                          New York, New York  10004
                                          (212) 582-6651

                                          Gary E. Roth, Esq.
                                          Javerbaum Wurgaft Hicks Kahn
                                          Wikstrom & Sinins
                                          Park Place Legal Center
                                          959 South Springfield Avenue
                                          Springfield, NJ 07081

                                          Attorneys for plaintiff
                                          Stephanie Neverson-Young