USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   8 - 11 - 11

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

STEPHANIE NEVERSON-YOUNG    :
                                                  :
                             Plaintiff,     :
                                                  :
              - against -                    :
                                                  :
BLACKROCK, INC., et al.,             :
                                                  :
                             Defendants.  :

**OPINION & ORDER**

**09 Civ. 6716 (CM)(RLE)**

**RONALD L. ELLIS, United States Magistrate Judge:**

## I. INTRODUCTION

Plaintiff Stephanie Neverson-Young filed this case on July 29, 2009, claiming employment discrimination and wrongful termination. Currently before the Court is Defendants' motion for discovery sanctions related to the alleged spoliation of and failure to produce certain electronic documents. Defendants seek the dismissal of this case, or in the alternative, an adverse inference instruction. For the reasons that follow, Defendants' motion is **GRANTED**, with the conditions detailed below.

## II. BACKGROUND

### A. Neverson-Young's Claims and The Discovery Process

Neverson-Young asserts that she was terminated from her employment with Defendant BlackRock after complaining about having been sexually harassed by her superior, Defendant AnnMarie Smith. Discovery in this case was complicated by issues relating to potential witness Shari Edwards. Edwards was originally claimed by Neverson-Young as a friend to whom she had confided regarding the sexual harassment. When the parties attempted to depose Edwards, however, they were unable to contact her. This Court ordered Neverson-Young to provide Defendants with contact information for Edwards (*see* Doc. No. 23), but Edwards did not

respond to attempts to reach her at the address provided, and this Court eventually issued an order barring Neverson-Young from offering Edwards's testimony at trial.

Some time after that issue was ordered, and after the close of discovery, Edwards appeared of her own volition at Defendants' attorney's offices and asserted that Neverson-Young had invented her claims, and had offered to pay Edwards and Neverson-Young's brother, Wayne Corion, in exchange for their testimony in support of her case. In response to this new information, Defendants obtained a 60-day extension of the discovery period, as well as permission to obtain Neverson-Young's computer hard drive, mobile phone, and other electronic discovery. (*See* Doc. No. 26.) After discovery was reopened, however, Edwards again became unresponsive, and Defendants were unable to contact her at home or at work to schedule her deposition. Defendants went so far as to move to have Edwards held in contempt, and Edwards eventually appeared to be deposed, but at her deposition she recanted her previous statements to Defendants' counsel, claiming that she had been angry at Neverson-Young and lied to Defendants' counsel in an attempt to harm Neverson-Young. (Dep. of Shari Edwards ("Edwards Dep.") at 79-81.)

## B. Alleged Discovery Misconduct

Largely as a result of the additional discovery they were permitted to conduct because of Edwards's original allegations, Defendants have identified a number of actions on the part of Neverson-Young that they claim amount to discovery misconduct and that form the basis for this sanctions motion.

### 1. Neverson-Young's Failure to Provide the Defendants with Edwards's Address

Defendants assert that Neverson-Young should be sanctioned for failing to comply with this Court's September 27, 2010 order (*see* Doc. No. 23) that Neverson-Young provide

2

Defendants with contact information for potential witness Edwards. Neverson-Young gave Defendants Edwards's home address, but did not supply her last known work address, believing that she had left that company's employ. (*See* Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Disc. Sanctions ("Mem. in Opp'n"), at 10.)

### 2. Spoliation of Neverson-Young's Computer

Defendants claim that Neverson-Young committed spoliation by disposing of a personal laptop computer that may have held documents related to the litigation. Neverson-Young claims to have donated the computer to a school in Grenada. Early in the litigation process she claimed to have donated the computer in 2008, potentially before retaining counsel in this case in the fall of that year. After Defendants discovered that Neverson-Young had her current laptop computer in August 2009, Neverson-Young admitted that she might have donated the computer in 2009, rather than 2008.

### 3. Failure to Produce Emails

Defendants also claim that Neverson-Young failed to turn over certain relevant documents from her Yahoo! email account. These documents include emails sent to potential witnesses Corion and Edwards regarding the conduct of discovery in the case, along with emails regarding her performance reviews at BlackRock that Neverson-Young had forwarded from her work to her personal email.

### 4. Failure to Preserve Telephone Records

Defendants argue that Neverson-Young should be faulted because she collected Edwards's and Corion's telephone records while marshaling her case, but failed to obtain a copy of her own telephone records. Defendants argue that these records contradict the testimony of Neverson-Young and Corion, and that they should not have had to bear the expense of

subpoenaing those records.

## III. DISCUSSION

### A. Legal Standard

Courts in this Circuit that are faced with disputes over electronic discovery have generally followed the framework set out by Judge Scheindlin in the *Zubalake* decisions, *see Zubalake v. UBS Warburg LLC*, 220 F.R.D. 212 (S.D.N.Y. 2003), and elaborated upon in *Pension Committee of University of Montreal Pension Plan v. Banc of America Securities*, 685 F. Supp. 2d 456 (S.D.N.Y. 2010). In evaluating such cases, courts first determine whether discovery misconduct has taken place. *Id.* at 463. If the court determines that a party's conduct was unacceptable, it must then determine whether the breach amounted to negligence, gross negligence, or willful misconduct. *Id.* at 463-64. Finally, the innocent party must show that the evidence destroyed or not produced was relevant to its claims or defenses, and that it is prejudiced without that evidence. *Id.* at 467. Relevance and prejudice may be assumed when the breaching party acted in bad faith, and in some cases of gross negligence. *Id.* "The determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge and is assessed on a case-by-case basis. Where the breach of a discovery obligation is the non-production of evidence, a court has broad discretion to determine the appropriate sanction." *Id.* at 469 (internal citations omitted).

### B. Neverson-Young Was Negligent in Failing to Preserve and Produce Evidence, But Defendants Have Failed to Show the Documents in Question Were Relevant and Prejudicial to Their Defenses

#### 1. The Failure to Provide Edwards's Work Address

The Court finds that Neverson-Young complied with the order by giving Defendants Edwards's home address but not her place of employment, when Neverson-Young reasonably

4

believed that Edwards was no longer working at that particular company, based on her knowledge of Edwards's pregnancy and the fact that Edwards had gone for a substantial length of time without working. (*See* Edwards Dep. at 130-31.)

At various points during discovery, Defendants have suggested that Neverson-Young was seeking to prevent them from talking to Edwards, presumably because Edwards would give damaging testimony against Neverson-Young. This line of inquiry resulted in Edwards being compelled to sit for a deposition. At the deposition, however, Edwards conceded that she had a personal disagreement with Neverson-Young and naively was seeking to punish her. (*Id*. at 79-81.) Rather than undermining Neverson-Young's assertions, Edwards's deposition supported Neverson-Young in key areas. For example, Edwards testified that Neverson-Young had spoken to her before leaving BlackRock about the harassment that Neverson-Young claimed to have experienced (*id*. at 70), and of Neverson-Young's superiors' refusal to take her allegations seriously. (*Id*. at 71.)

Since the Edwards deposition did not indicate any reasons why Neverson-Young would want to shield her testimony, the Court finds no reason to find that Neverson-Young's failure to provide Edwards's work address was deliberate. Accordingly, there was no misconduct in this regard, and sanctions are not warranted for this action.

### 2. Neverson-Young's Failure to Preserve Her Previous Computer

Neverson-Young committed spoliation by donating her laptop after she had contemplated and possibly even commenced this litigation, when she had a duty to preserve electronic evidence related to this case. The Court, however, finds that this misconduct was merely negligent, rather than grossly negligent or willful. In contrast to corporate actors who have been found to be grossly negligent in failing to preserve certain evidence, Neverson-Young is

unsophisticated and unaccustomed to the preservation requirements of litigation. *See id.* at 475

(considering the sophistication of parties in determining their culpability). There has been no

evidence that she was aware of her duty to preserve the laptop, or that it was donated for any

reason other than a genuine wish to help those in need. Defendants offer little more than

speculation as to the documents that might have been on the laptop, asserting that because

Neverson-Young composed some relevant documents on that computer, there must be more that

were not found, and "Defendants have no way to know what documents existed on the spoliated

computer." (Mem. in Supp. of Mot. at 7.) Accordingly, they have not shown relevance and

prejudice with relation to the documents on the computer.

### 3. Neverson-Young's Failure to Produce Emails

Neverson-Young was similarly negligent in failing to produce emails that were relevant

to the litigation and responsive to Defendant's document requests. Once again, Neverson-

Young's lack of sophistication contributed to her error, as she appears to have had a good faith

belief that the documents not produced were either privileged or not relevant. As she has

complied in large part with Defendants' discovery requests, turning over a large volume of

documents and willingly providing consent for Defendants to access her electronic records, the

Court does not find that Neverson-Young acted willfully or with gross negligence in this regard.

Because Defendants ask the Court to assume bad faith on the part of Neverson-Young,

they have offered little evidence of prejudice incurred as a result of Neverson-Young's failure to

produce emails. (Mem. of Law in Supp. of Def.'s Mot. for Disc. Sanctions ("Mem. in Supp."), at

13-14.) The emails that they have since discovered that Neverson-Young initially failed to

produce do not tend to support Defendants' defenses. Defendants point to minor discrepancies

between documents recovered from Neverson-Young's email and her Complaint and Corion's

6

deposition testimony, and assert that these discrepancies are harmful to her case. These discrepancies include whether Neverson-Young's supervisor, when she complained to him about Smith's behavior, suggested that the two women should "go out to lunch" or "go out shopping," the failure of one document that Neverson-Young prepared in laying out her claims to address her claims of race and marital-status harassment, and the extent to which Neverson-Young and Corion discussed his testimony before his deposition. Defendants fail to show how Neverson-Young's case is really harmed by the documents, which overall tend to confirm the allegations in the Complaint. (*See id.* at 17, Mem. in Opp'n at 7.) Accordingly, they have again failed to establish relevance or prejudice.

### 4. Neverson-Young's Failure to Preserve Her Telephone Records

The Court does not find any misconduct in Neverson-Young's failure to obtain a copy of the records of calls made to and from her telephone, even if such records would, as Defendants claim, show that she did not make certain calls that she claimed to have made. It is not standard or required practice for litigants, even those who imagine that the telephone records of others will provide useful evidence, to preserve their own telephone records or to obtain a copy in anticipation of litigation. Accordingly, sanctions are not warranted for this action.

### C. The Appropriate Sanction

Defendants have not established that Neverson-Young's misconduct rose to a level such that extreme sanctions such as dismissal or an adverse inference instruction are warranted. As Neverson-Young was negligent in her conduct of discovery, however, certain sanctions are appropriate. The Court finds that Neverson-Young should be responsible for Defendants' reasonable costs and fees incurred in searching her hard drive and obtaining her email records.

7

## IV. CONCLUSION

For the foregoing reasons, Defendants' sanctions motion is **GRANTED**, with the conditions set forth above. Defendants shall submit to the Court an itemized list of requested costs on or before August 22, 2011.

**SO ORDERED this 11th day of August 2011**
**New York, New York**

The Honorable Ronald L. Ellis
United States Magistrate Judge